# IN THE UNITES STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **NORMAJEAN WEIDLEY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 5:22-cv-00905-LCB |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| **AANIIIH NAKODA FINANCE LLC,** | ) |
| d/b/a **BRIGHT LENDING;** | ) |
| **BORROWWORKS, LLC; BENJAMIN** | ) |
| **E. GATZKE,** | ) |
| | ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT FOR INDIVIDUAL AND CLASS RELIEF

Plaintiff amends her complaint against Defendants to allege as follows:

| | |
|---|---|
| **NORMAJEAN WEIDLEY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 5:22-cv-00905-LCB |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| **AANIIIH NAKODA FINANCE LLC,** | ) |
| d/b/a **BRIGHT LENDING;** | ) |
| **BORROWWORKS, LLC; BENJAMIN** | ) |
| **E. GATZKE; JEFFREY STIFFARM,** | ) |
| individually and as President of the | ) |
| Fort Belknap Indian Community; | ) |
| **JUDITH KING,** individually and as | ) |
| Vice President of the Fort Belknap Indian | ) |
| Community; and **ROBERT BEARCUB,** | ) |
| individually and as Secretary/Treasurer | ) |
| of the Fort Belknap Indian Community, | ) |
| | ) |
| Defendants. | ) |

Plaintiff brings this action for herself and on behalf of a class of similarly situated Alabama residents for injunctive relief and damages resulting from the lending practices of Defendants in violation of the Alabama Small Loans Act, Ala. Code §§ 5-18-1 through 23 (1975) ("ASLA").

## THE PARTIES

1. Plaintiff Normajean Weidley is an adult resident of Madison County, Alabama.

2. Defendant Aaniiih Nakoda Finance LLC d/b/a Bright Lending ("Bright Lending") is a limited liability company, at least one member of which claims to be the Fort Belknap Indian Community of Fort Belknap Reservation of Montana ("Fort Belknap Tribe" or the "Tribe"). Bright Lending is not incorporated under the laws of any state or under federal law.

3. BorrowWorks, LLC ("BorrowWorks") is a limited liability company formed in the State of Delaware, with its principal place of business in Texas. BorrowWorks is not owned by any tribal arm, tribal entity or tribal member. On information and belief, BorrowWorks performs many of the tasks necessary to run Bright Lending's online lending enterprise. This includes marketing, loan application processing, distributions of loan proceeds and payment collection, among other things. The Bright Lending trademark was obtained by BorrowWorks. Upon information and belief, Defendant Gatzke is BorrowWorks' principal.

4. Defendant Benjamin E. Gatzke ("Gatzke") is an adult resident of Texas and is the President and CEO of BorrowWorks. Gatzke is directly involved in the operations of the Bright Lending enterprise. Upon information and belief, Gatzke is also the principal owner and operator of other corporate entities involved in the operation of Bright Lending and other tribal-affiliated lending operations. Gatzke is not a member of any tribe.

5. Defendant Jeffrey Stiffarm ("Stiffarm") is an adult resident of Montana and is the President of the Fort Belknap Indian Community. In his capacity as President, Stiffarm had general supervisory control over the lending business conducted by Aaniiih Nakoda.

6. Defendant Judith King ("King") is an adult resident of Montana and is the Vice President of the Fort Belknap Indian Community. In her capacity as Vice President, King had general supervisory control over the lending business conducted by Aaniih Nakoda.

7. Defendant Robert Bearcub ("Bearcub") is an adult resident of Montana and is the Secretary/Treasurer of the Fort Belknap Indian Community. In his capacity as Secretary/Treasurer, Bearcub had general supervisory control over the lending business conducted by Aaniih Nakoda.

8. Bright Lending is an internet lender which peddles high-interest small loans to the citizens of Alabama and other states through the internet. All of its lending business is conducted over the internet and off of any recognized tribal reservation. Bright Lending functions as a lending label. It is not the lending operation behind the label. The actual operation and management of the lending business is conducted through non-tribal members and entities located outside of any tribal land. The capital and other resources required to conduct the Bright Lending operation are provided by non-tribal members and entities located outside of any tribal land. The non-tribal, off-reservation entities and individuals that market, fund, operate and profit from the loans extended in Alabama under the Bright Lending label include Defendants BorrowWorks and Gatze.

9. The annual interest rates charged for loan extended in Alabama under the Bright Lending label range between 400% and 699.9% annually.

10. Neither Bright Lending nor any of the entities or individuals that fund, operate and/or profit from loans extended in Alabama under the Bright Lending label have ever been licensed to extend small loans in Alabama.

11. The high-interest illegal loan to Plaintiff (described below) and at least one high-interest illegal loan to each member of the class were made under the Bright Lending label. Each such loan was made in blatant violation of Alabama law. Each loan was extended with the Defendants' knowledge that the borrowers resided in Alabama at the time the loan was extended, that the borrowers were executing the loan documents from Alabama and that Bright Lending was not licensed to issue payday loans in Alabama and that the loans violated Alabama law. Moreover, and as described below, the Bright Lending loan documents contain language specifically designed to avoid any application of Alabama law and to shield its operators and beneficial owners from liability for its lending practices in Alabama which the operators and beneficial owners know clearly violate Alabama law. Upon information and belief, Defendants BorrowWorks and/or Gatzke are directly involved in the drafting and approval of the Bright Lending loan documents.

12. Defendants operate an interactive website under the Bright Lending label through which illegal small loans are marketed to residents in Alabama. Through the Bright Lending website, Defendants interact with borrowers in Alabama for every phase of the lending process including application, execution and delivery of loan documents, distribution of loan proceeds and collections. All this is done through the Bright Lending website with the borrowers and prospective borrowers located in Alabama. The domain for the Bright Lending website is owned by an entity controlled by Gatzke.

13. Defendants specifically target certain states, including Alabama, using the Bright Lending label and website. Defendants have made the deliberate choice to focus the Bright

Lending operation practice in states like Alabama and they refuse to lend in certain other states such as Arkansas, Connecticut, Massachusetts, Montana, New York, Pennsylvania, Puerto Rico, Vermont, Virginia and West Virginia.  Upon information and belief, the decision to lend in certain states and not others is based, at least in part, on whether state enforcement actions and lawsuits like this one have been brought in the state.  In any event, the Bright Lending operation has deliberately targeted its marketing and lending activities into Alabama.

14. The loans to Plaintiff and members of the class were the result of Defendants' marketing practices under the Bright Lending label which were intentionally directed into Alabama for the purposes of soliciting high-interest unlicensed small loans from Alabama residents.  Defendants purposefully availed themselves of the privilege of conducting activities within Alabama and to the jurisdiction of its courts in resolving disputes related to these loan transactions.

## JURISDICTION AND VENUE

15. This Court has federal subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and over Plaintiff's state law claims pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists.

16. This Court also has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case and controversy and derive from a common nucleus of operative facts.

17. Venue is proper in this district pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b)(2) because Defendant conducts its affairs in this district and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## FACTS

18. This action concerns small predatory loans made in Alabama which blatantly violate Alabama law. High interest online predatory lending is a highly profitable business. At the same time, federal law imposes no substantive restraints on what small loan lenders may charge. Such regulation is left to the states, and many states (including Alabama) impose some combination of licensing requirements and anti-usury caps on small loans to protect their citizenry from predatory lending practices.

19. Alabama imposes limits on interest rates and other charges lenders may impose in connection with small loans. Alabama's cap on the interest rate on loans smaller than $1,500 is 36%. These legal limits are well below the rates typically charged by predatory on-line lenders. The Bright Lending loans to Plaintiff and the class members likewise imposed finance charges which exponentially exceeded Alabama's legal limit.

20. Alabama, and many other states, also require any person extending small loans be licensed. Extending small loans in Alabama without a license is a crime. The high-interest small on-line loans peddled to Plaintiff and members of the class were made by entities not licensed in Alabama.

21. Persons seeking profit from high-interest illegal and predatory loans must devise schemes to evade state law. Native American lenders attempt to use tribal immunity and the tribe's unique legal status as a shield from state law. Under this type of scheme, the tribe or tribal entity uses online marketing campaigns under the tribal label into states like Alabama. That marketing

targets individuals who are struggling financially and offers near instant cash through high interest loans. The instant cash loans are initiated by the borrower and processed over the internet all from the comfort of the borrower's home. All loan documents are signed in borrower's state, money is directed to bank accounts in the borrower's state and payments are extracted from borrower accounts in the borrower's state. The money flowing to and from borrowers is often funneled through non-tribal entities and individuals, all operating off tribal land. These schemes work in conjunction with lender-friendly tribal laws which impose little or no limits on what may be charged in connection with these loans.

22. To provide a shield from the legal consequences of extending loans which clearly violate state law, these lenders craft loan agreements to include choice of law and/or dispute resolution clauses designed to ensure the application of lender-friendly tribal laws and forums, at the exclusion of state laws which would otherwise apply. The language is also designed to invoke the sovereign immunity of the tribe to shield the lending enterprise from the legal consequences of issuing illegal loans in states like Alabama.

23. In recent years, these schemes have come under increasing scrutiny from regulators and courts. One prominent perpetrator of such a lending scheme was convicted and sentenced to 16 years in prison related to federal racketeering and truth-in-lending laws.[1] Courts around the nation have criticized the practice. The Seventh Circuit Court of Appeals declared payday loan agreements designed to impose tribal law as the exclusive applicable law to be a "sham from stem

---

[1] https://www.reuters.com/article/us-usa-paydaylending-crime/race-car-driver-tucker-gets-more-than-16-years-for-lending-scheme-idUSKBN1EU20L. https://www.reuters.com/article/us-usa-paydaylending-crime/race-car-driver-tucker-gets-more-than-16-years-for-lending-scheme-idUSKBN1EU20L.https://www.reuters.com/article/us-usa-paydaylending-crime/race-car-driver-tucker-gets-more-than-16-years-for-lending-scheme-idUSKBN1EU20L

to stern." Similar observations were made by the Fourth, Second and Third Circuit Courts, as well as numerous federal District Courts nationwide.

**The Alabama Small Loans Act**

24. The Alabama Small Loans Act, Ala. Code Sections 5-18-1 through 23 (1975) ("ASLA"), was originally enacted in 1959 in an attempt to address the "evils" created by an increased demand for small loans and unscrupulous lenders who seek to profit from that demand. The legislature found that "borrowers of small sums are being exploited to the injury of the borrower, his dependents and the general public. Charges are generally exorbitant in relation to those necessary to the conduct of a legitimate small loan business, trickery and fraud are common and oppressive collection practices are prevalent." Ala. Code § 5-18-2(5).

25. Central to the ASLA's regulatory scheme is its licensing requirement. The ASLA prohibits any person from engaging "in business of lending in amounts of less than one thousand five hundred dollars ($1,500) and contract for, exact or receive, directly or indirectly, on or in connection with any such loan, any charges whether for interest, insurance, compensation, consideration, or expense . . . without first having obtained a license from the supervisor." Ala. Code § 5-18-4. Extending small loans without a license is a crime, punishable by up to six months of imprisonment. Ala. Code § 5-18-4(d).

26. The Alabama legislature recognized that efforts or evade these requirements and other "trickery and fraud" were prevalent among small loan lenders. Ala. Code § 5-18-4(d). (Section 5-18-2(5). Indeed, it is a wide-spread practice among companies seeking to make large profits from usurious small loans to take various steps to evade the protections of state laws which cap legal rates of interest and other charges, as well as regulate small loan lenders through licensing requirements. One such evasive approach is the rent-a-tribe scheme described here. The

legislature addressed such evasive schemes by extending the ALSA's requirements "to any person who seeks to evade its application by any device, subterfuge, or pretense whatsoever including, … arrangement or procurement of a loan through any use of activity of a third person, whether real or fictitious." Ala. Code § 5-18-4(c). The scheme operated by Defendants meets this definition precisely. It is designed with the intent to evade the protections of Alabama law by subterfuge, pretense and through the use of a third person, in this case the tribe.

27.     Under the ASLA, any loan agreement covered by the Act and made by an unlicensed lender is null and void. "Any contract of loan in the making or collection of which acts shall have been done which violates this section (licensing requirement) shall be void, and the lender shall have no right to collect, receive, or retain any principle, interest or charges whatsoever." Ala. Code § 5-18-4(d).

28.     The ASLA also limits the amounts which can be charged in connection with small loans. These limits protect the borrower while at the same time allowing for a "rate of charge sufficiently high to permit a business profit." Ala. Code § 5-18-2(b). To that end, the Act imposes maximum rates of interest in the amount of 24 % for loans ranging from $201.00 to $1,500.00 and 36 % for loans up to $2,000.00. The Act requires licensees to refund the amounts extracted in excess of those limits and renders it a crime to knowingly impose charges which violate the caps. Ala. Code § 5-18-14(l).

**The Loan to Plaintiff**

29.     On or about November 5, 2020, in response to Defendants' on-line loan offerings, Plaintiff entered into a loan agreement with Bright Lending in the principal amount of $700.00. The annual percentage rate was 699.9985 %, with the total finance charge of $3,086.94. The total amount of payments for this $700.00 loan was $3,786.94.

30. The loan to Plaintiff was processed through the Bright Lending website and was initiated by Plaintiff from Alabama. All the actions by Plaintiff to consummate the loan, including her acceptance of the offered loan terms, were made by her from her home in Alabama.

31. The loan was made with an Alabama resident located in Alabama and is subject to Alabama law, including the licensing requirements set out in the ASLA. At no time during the relevant period was Bright Lending or any of the Defendants licensed through the Alabama Department of Banking, as required by the ASLA.

32. The loan made to Plaintiff was formed in the State of Alabama and are, therefore, subject to Alabama law.

33. The loan contract with Plaintiff is void *ab initio* in its entirety by operation of the ASLA. Ala. Code § 5-18-4(d).

34. The loan contract with Plaintiff is also void *ab initio* in its entirety because the subject matter of the contract (the making of a covered loan without a license) constitutes a crime, as defined by the ASLA, and the contract was formed through the commission of a crime.

35. The loan contract is also void as against the public policy unambiguously expressed in the ASLA.

36. The choice of law provision in the loan document is unconscionable and unenforceable because it deprives Plaintiff of her substantive state statutory rights.

37. All the substantive activities associated with the loan to Plaintiff occurred outside any tribal land, and those activities constitute commercial transactions made outside tribal lands.

38. Any sovereign immunity which might be otherwise enjoyed by any of the Defendants has been waived by the operation of a for-profit unlawful and criminal lending operation within the State of Alabama.

**The Class**

39. Plaintiff asserts her claims individually and on behalf of a class of similarly situation individuals defined as follows:

> All Alabama residents from whom Defendants collected, received or retained any sums in connection with any personal loan extended by Defendants in Alabama (wherein the actions taken by the borrower to accept the terms of the loan agreement were made from within Alabama) to such resident in any principal amount less than One Thousand Five Hundred Dollars ($1,500) and within the period beginning four years preceding the filing of this Complaint to the date that the class is certified.

(The "Class").

40. Excluded from the Class are: (1) individuals who already have settled a lawsuit, claim, or obtained a judgment against Defendants arising from the wrongdoing complained of in the Complaint or (2) Defendants, their officers, directors, and employees, or any affiliate of Defendants, members of each of their immediate families and each of their legal representatives, heirs, successors or assigns; (3) any entity in which Defendants have or had a controlling interest; (4) all judicial officers in the United States; and (5) the undersigned counsel and the members of their immediate families.

41. The loans made to the members of the Class were formed in the State of Alabama and are, therefore, subject to Alabama law.

42. Each of the loans with the members of the Class is void *ab initio* in the entirety by operation of the ASLA. Ala. Code § 5-18-4(d).

43. Each of the loans with the members of the Class is also void *ab initio* in its entirety because the subject matter of the contract (the making of a covered loan without a license) constitutes a crime, as defined by the ASLA, and the contract was formed through the commission of a crime.

11

44. The loans made to members of the Class are also void as against the public policy unambiguously expressed in the ASLA.

45. All the substantive activities associated with the loans to the members of the Class occurred outside any tribal land, and those activities constitute commercial transactions made outside tribal lands.

46. Any sovereign immunity which might be otherwise enjoyed by the Defendants with respect to loans made to members of the Class has been waived by its operation of a for-profit unlawful and criminal lending operation within the State of Alabama.

47. The Class is so numerous that joinder of each member of the Class would be impracticable.

48. The claims of the Plaintiff are typical of the claims of the Class. All claims of the Plaintiff and class members depend on a showing that the Defendants engaged in a scheme to offer, sell, and collect on small loan sold to residents of Alabama which violate the ASLA. There is no conflict between the individual named Plaintiff and other members of the Class with respect to this action or with respect to the claims for relief set forth in this Complaint.

49. This action is maintainable as a class under Rule 23(b)(1) of the Alabama Rules of Civil Procedure as the facts will show a uniform pattern of conduct by the Defendants that will leave the Court with the task of answering the discreet legal question as to whether their conduct was and remains unlawful and in violation of the ASLA. Given these questions presented to the Court, maintenance of separate actions against the Defendants would create a substantial risk that adjudication of an individual member of the Class would be virtually dispositive of the interests of the other members of the Class and substantially impede their ability to protect their interests.

50. This action is maintainable under Rule 23(b)(2) if the Alabama Rules of Civil Procedure as the Defendants, through its actions as alleged herein, has acted or refused to act on grounds generally applicable to the Class, making declaratory relief appropriate to the Class as a whole.

51. The requirements of Rule 23(b)(3) are met by the following issues and facts of the case:

    a. There are common questions of law and fact involved with this action that affects the rights of each member of the Class, and the relief sought is common to the Class, namely:

        i. Whether the loan agreements are subject to Alabama law;

        ii. Whether the subject loans violated the ASLA;

        iii. Whether the subject loans are void *ab initio*;

        iv. Whether the arbitration, class action waivers, choice of law and other dispute resolution provisions in the subject agreements are valid and enforceable;

        v. Whether the choice of law provisions in the subject agreements selecting tribal law and excluding the application of state law, including Alabama law, are valid and enforceable;

        vi. Whether any of the Defendants are entitled to any sovereign immunity relating to actions taken with respect to the subject agreements;

        vii. Whether the Defendants must disgorge all sums has collected, received and retained collected in connection with the loans; and

        viii. Whether the Defendants should be enjoined from continuing to offer loans in Alabama without a license.

    b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

        i. The members of the Class have little interest in or ability to bring separate actions as their individual monetary losses are relatively small; and

    ii.  It is desirable to concentrate all claims relating to the uniform business practice of the Defendants in one judicial forum.

52. There are no foreseeable difficulties likely to be encountered in the management of this class action in that the Defendants have records indicating: (1) the number of Class Members; (2) the identities of the members of the Class; and (3) reliable contact information of the members of the Class.

53. The Plaintiff will fairly and adequately represent the interests of the Class as the Plaintiff is a member of the Class, the Plaintiff's claims are typical of those in the Class, and there are no conflicts between the claims of the Plaintiff and the claims of other members of the Class.

54. The attorneys for the Plaintiff are experienced and capable in litigation in the field of class actions and in the fields of consumer protection, debt collection, and credit reporting.

## **COUNT I**

55. Plaintiff realleges and incorporates all of the preceding paragraphs as if fully set out herein.

56. The ASLA prohibits any person from engaging "in business of lending in amounts of less than one thousand five hundred dollars ($1,500) and contract for, exact or receive, directly or indirectly, on or in connection with any such loan, any charges whether for interest, insurance, compensation, consideration, or expense . . . without first having obtained a license from the supervisor." Ala. Code § 5-18-4.

57. The licensing requirement extends "to any person who seeks to evade its application by any device, subterfuge, or pretense whatsoever including, … arrangement or procurement of a loan through any use of activity of a third person, whether real or fictitious." Ala. Code § 5-18-4(c).

14

58. Any loan covered by the ASLA which was made by an unlicensed lender is null and void *ab initio*. Ala. Code § 5-18-4(d).

59. Any loan covered by the ASLA which allows for rates of charge in excess of the limits set forth in the ASLA is void *ab initio*. Ala. Code § 5-18-4(d).

60. The loan extended to Plaintiff was in an amount less than One Thousand Five Hundred Dollars ($1,500) and was subject to the prohibitions and requirements of the ASLA.

61. Each of the loans extended to the members of the Class was in an amount less than One Thousand Five Hundred Dollars ($1,500) and was subject to the prohibitions and requirements of the ASLA.

62. At no time prior to the consummation of the loan to Plaintiff or the members of the Class were any of the Defendants licensed as required by the ASLA.

63. Defendants have collected, received, and retained principal and interest payments, as well as payments of other charges and fees, in connection with the loans to Plaintiff and to the member of the Class in violation of the ASLA, or have supervised and participated in such activities.

64. Defendants have violated the ASLA with respect to every loan extended to Plaintiff and to each member of the Class.

## COUNT II

65. Defendants BorrowWorks, Gatzke, Stiffarm, King and Bearcub each conspired and agreed to the making of illegal loans and the facilitation of collection of illegal loans through Bright Lending. Each of said Defendants had a supervisory role over the tribe's businesses including, but not limited to, its illegal lending operations.

66.     As a result of said conspiracy, Plaintiff, and the putative class as alleged herein, sustained injury as a result of the conspiracy to violate Alabama law and the making of said illegal loans.

## COUNT III

67.     Defendants Stiffarm, King and Bearcub are sued in this Count III in their individual, official capacities as leaders of the Belknap Tribe of the Fort Belknap Indian Community.

68.     Each of said Defendants, in their official capacity, supervise and direct the lending activities of Bright Lending on behalf of the Fort Belknap Indian Community. As such, under *Ex parte Young*, 209 U.S. 123 (1908), these tribal officials are subject to suit in federal court for violation of state law when, as here, the conduct occurs outside of Indian lands.

69.     Each of the above-named Defendants have the ability to control and prevent the illegal lending operation undertaken by Defendants.

## COUNT IV

70.     Defendants Stiffarm, King, Bearcub, BorrowWorks and Gatzke are each being sued in their individual capacities for their own conduct violating RICO, 18 U.S.C. § 1962(c). Each individual Defendant conducted the affairs of Bright Lending by directing its internet lending operations.

71.     As alleged herein, Defendants Stiffarm, King, Bearcub, BorrowWorks and Gatzke engaged in the collection of unlawful debt and directly or indirectly conducted the affairs of Bright Lending.

72.     Said Defendants are each a "person" as that term is defined in 18 U.S.C. § 1961(3).

73.     Bright Lending is an enterprise as defined by 18 U.S.C.A. § 1961(4) which activities affect interstate commerce by making loans across state lines.

74. Defendants violated § 1962(c) of RICO by participating, directly or indirectly, in the conduct of Bright Lending's affairs in the collection of unlawful debt. RICO defines "unlawful debt" as a debt which was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6). All of the loans made to Class members and collected by Defendants and others included interest rates far in excess of twice the enforceable rate in their states.

75. Defendants' conduct of the enterprise for the collection of unlawful debts are part of a continuing pattern and part of an ongoing business operation which projects into the future with a threat of repetition.

76. Plaintiffs and the Class members were injured as a direct result of Defendants' violations of 18 U.S.C. § 1962(c) by, among other things, the payment of unlawful and usurious rates of interest on loans made by the enterprise which would not have been made but for Defendants' conduct.

77. Accordingly, Defendants are jointly and severally liable in their individual capacities to Plaintiffs and the RICO Class for their actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, for himself and on behalf of the above-described Class, demands judgment as to the following:

    a. Declaring that the loan contract entered into between Plaintiff and Defendants is void in its entirety *ab initio*;

    b. Declaring that each of the loan contracts entered into between Class Members and Defendants is void in their entirety *at initio*;

c. Requiring that Defendants return to Plaintiff all sums collected, received or retained in connection with the loan extended to her;

d. Requiring that Defendants return to the members of the Class all sums collected, received or retained in connection with each loan extended to the members of the Class;

e. Enjoining Defendants from collecting or servicing the illegal loans, and from making any loans in the future in the State of Alabama in violation of Alabama law, and such other injunctive relief as is appropriate;

f. Awarding actual damages to Plaintiff;

g. Awarding treble damages pursuant to 18 U.S.C. § 1064(c);

h. Certifying this action as a class action;

i. Awarding any appropriate damages to the Class;

j. Awarding attorney's fees and costs to the attorneys for the Class; and

k. Awarding any other relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO ALL CLAIMS ASSERTED HEREIN.**

*/s/ Kenneth J. Riemer*
KENNETH J. RIEMER (RIE003)
Riemer Law, LLC
2153 Airport Boulevard
Mobile, AL 36606
Kriemer01@gmail.com
(251) 432-9212 Phone
Kriemer01@gmail.com


*/s/ Steven L. Nicholas*
STEVEN L. NICHOLAS (NIC2021)
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, Alabama 36604
sln@cunninghambounds.com
(251) 471-6191 Phone
(251) 479-1031 Facsimile

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 9th day of September, 2022, I electronically filed the foregoing with the Clerk of the Court using the Ala-File filing system and notified all attorneys of record through said system.

                                      */s/ Kenneth J. Riemer*
                                      KENNETH J. RIEMER